316-0100, People of the State of Illinois, athlete by Diane Hamble, v. Alfred Lee, appellant by Sean Conley. Mr. Conley. May it please the Court, Counsel, my name is Sean Conley, I represent Mr. Alfred Lee. I'm from the Office of the State Appellate Defender. We've raised a single issue on appeal, which is ineffective assistance of counsel based on trial counsel's failure to move to suppress when the facts that made suppression necessary came out at the hearing on the compulsory joinder motions. And I should add that Mr. Lee was sentenced for unlawful possession of a controlled substance to six years' incarceration. Now, as you consider the case today, there's something I would ask your honors to keep in the back of your minds. One of the elements of compulsory joinder is that the state had all of the information that it needed, that is that it had probable cause to charge all of the offenses in question at the same time. So the thing that I would ask your honors to remember as we move forward is that the state's position at that hearing, the one thing that it was trying to prove from its cross-examination of the officer who seized the substance that turned out to be cocaine, was that the officer did not have probable cause until lab reports came back later. Any claim now that the officer testified to having probable cause or to knowing facts that could later be considered to support probable cause ignores the fact that the prosecutor in this case presumably would have prepared for that hearing and assured herself from that officer that such facts never existed. And with regard to that, there are two points that I would like to, just factual points I would like to clarify before we move to the merits of the issue. First, the state tries to minimize its officer's testimony that he thought the substance he seized was oatmeal, by arguing that that testimony was the result of questioning during the hearing, and particularly the defense counsel's persistent questioning during that hearing. But this was a defense motion. The defense called that officer, and it was during the state's cross-examination with that officer that he testified that he had no idea what the substance was, that he did not recognize it as an illegal substance, that it looked like oatmeal to me. In response to further questioning by the prosecution, the officer agreed that the substance looked like oatmeal, and that, and I'm just going to read the question real quick. In fact, it could have been the oatmeal you thought it was, correct, to which the officer answers correct. So it was the prosecution's persistent questioning that has us talking about oatmeal this morning, not the defense's. In fact, the defense asked a single oatmeal-related question, which was, if it looked like, just like oatmeal to you, why did you seize it? The officer referenced the packaging, but then immediately insisted that he had no idea what was in the packaging. How was it inventoried? It was inventoried as an unknown brown substance or unknown brown powdery substance. The officer testifying that he explicitly decided not to inventory it as suspected contraband or suspected drugs. So, again, this is the state's position below, and this was the state's entire point at this hearing. It embraced the notion that this officer thought this stuff looked like oatmeal, perhaps thought it was oatmeal. It made it an important part of its theory to defeat the compulsory joinder motion. It gained a benefit from that, and as I've argued in the reply brief, because of that, the state has stopped at this point from arguing a different factual position. The second point that I want to clarify before we move forward is that the state in its brief uses the phrase, quote, allegedly inconsistent testimony. I just want to make clear, I'm not arguing today that the testimony between the compulsory joinder hearing and the earlier suppression hearing was inconsistent. In fact, I'm arguing that the officer was telling the truth at both hearings. That is, that the testimony at the earlier suppression hearing was incomplete, perhaps misleadingly so, and that it was clarified by the testimony at the compulsory joinder hearing. Now onto the merits. The gist of the case is simple. The underlying Fourth Amendment violation is a classic suppression issue. This is black letter law. The Sixth Amendment issue that we've actually raised as the error here comes about because of counsel's failure to recognize that black letter suppression issue and act on it, despite the fact that her strategy in the case had been to suppress the evidence in the case. Let me just ask you, what do we mean by that? There had been a previous suppression. Sure. And at that hearing, the officer testified that he thought, he believed the substance was either heroin or a bad batch of cocaine. So, again, Your Honor, if we reconciled the testimony at that hearing with the testimony at the later hearing, which I believe that we have to do, I'm not accusing the officer of lying or anything like that. Okay. I'm not making that accusation at this point. Okay. Okay. I'm assuming that he was telling the truth. Because, again, the other thing about that point, Your Honor, is that the prosecutor was the same prosecutor that would have prepared the suppression hearing as well. They are the same prosecutor. I would assume that that prosecutor knew what he had testified to before and had communications with this officer. I certainly would have if I had been in her position. And that prosecutor cannot bring that testimony if she thinks that it's not true at that second hearing. And, again, I don't want to accuse the cop of lying here, and I don't want to accuse the prosecutor of suborning that lying. That's not what we're here for. Assuming that they're both true, then what we have is a situation where a police officer sees something. It is, admittedly, packaged in a somewhat suspicious way. He thinks it's packaged like drugs. What drugs could it be? Maybe heroin, maybe bad cocaine. But you know what? It really looks like oatmeal. I kind of think it's oatmeal, but maybe I should see. It's a hunch. He's testifying to a hunch, and a hunch cannot support a seizure. That's the gist of the Fourth Amendment issue. I'm just trying to figure out how anybody could mistake drugs for oatmeal. It's interesting that you say that, Your Honor. We have the testimony later in the proceedings of another officer who says this is particularly unusual, both in consistency and color from cocaine. I myself have done cocaine cases. I know what cocaine looks like. This doesn't look like cocaine. We have pictures of the substance. To me, now I don't eat a lot of oatmeal myself, so I don't know what that would look like, but to me it does look like brown sugar or perhaps instant coffee that has been individually packaged out of the larger package. This is the sort of thing that my wife used to do with our kids when we were young. Of course, I don't give my kids instant coffee, but cereal, et cetera. And that seems to be what the officer is testifying he thought that this was. Of course, it is packaged in this odd way. And would it be reasonable to keep oatmeal under the bed sheets? If you're preparing for work for the day, you know. It's at the foot of the bed, isn't it? The top sheet? That is correct. I'm not going to speculate as to what Mr. Lee was doing that morning. I can say that when I'm making my bed, it's towards the end of the morning, and that if I were preparing my lunchbox, there's a good possibility that my bag of oatmeal would have been found in the same place. The warrant in this case did not authorize the seizure of this substance, so we have to turn to the plain view doctrine. Now, there are several elements to that doctrine. The most important for us this morning is that the illegality of the substance must be immediately apparent. Now, to restate that doctrine, as the Humphrey court did, focusing on that element, quote, if an officer lacks probable cause to believe that an object in plain view is contraband without conducting some further search of the object, i.e., if the incriminating character of the object is not immediately apparent, the plain view doctrine cannot justify the seizure, end quote. And at the risk of repeating myself, the state's position at the compulsory joinder hearing supported by that officer's testimony was that the officer lacked probable cause to believe that the substance was contraband until a further search in the form of lab testing had been completed. Police executed a warrant that authorized the seizure of evidence relating to a shooting. The officer testified at the hearing on a motion to dismiss on compulsory joinder and speedy trial grounds, and that's joinder with the shooting case, to be clear, that while the substance was packaged consistent with drugs leading to the seizure, he had no idea at the time what the substance was. He did not field test it because he did not know what test to use. He could not think of a single offense for which Lee could be charged based on what he knew and believed at the time. He agreed that it would be unethical for him to charge someone without evidence of a crime implying that he did not believe there was probable cause to think that the substance was evidence of a crime. He intentionally refused to list the substance in the search inventory as suspected contraband. He agreed that based on his years of experience, he had no recognition of the substance as an illegal substance. He agreed that it could have been the oatmeal he thought it was at the time. Ultimately, the trial court credited this testimony making findings of the fact that the officer did not recognize and could not identify the substance and that the state, quote, did not have charges they could file, end quote, prior to the lab results identifying the substance. That is, to paraphrase Humphrey, the officer testified and the trial court found that there was no probable cause to believe that the substance was contraband without conducting some further search. That is, that the incriminating character of the substance was not immediately apparent. Had trial counsel – I'm sorry? Let me ask you something. Let's see. Humphrey was what year? Well, I can tell you amongst the – let me ask you something. What did the U.S. – what's the U.S. Supreme Court said about this immediately apparent notion? In Texas v. Brown, didn't the U.S. Supreme Court describe that immediately apparent language as an unhappy choice of words? And the – and it says that immediately apparent is a probable cause of discrimination and does not require a law enforcement officer to know that the item is contraband or evidence of a crime. Well, again, this officer testified that he had no idea what this was. And it didn't – it also said – I mean, it's not really – if from the standpoint of an objectively reasonable officer, the items that create a reasonable probability that the defendant is committing a crime, and the one particular officer's subjective knowledge is irrelevant. It's an objectively reasonable officer's standard. Well, I would have two responses to that. The first would be that in practice in Illinois, while we generally talk about objective standards in terms of the Fourth Amendment, and I would concede that an objective standard would apply, okay, this court and trial courts traditionally have given great weight to the subjective experience of the officers. And in practice, this is how we do it here. So what if you got a first-date copper out there, and he goes in and he pulls in a bed sheet or something, looks at a place like that and sees baggies of powder, and he says, you know, he grew up on Navajo, so he hasn't seen drugs, but he thinks this is, you know, some drugs are packaged, I know, and stuff like that. I don't know what this stuff is, but because of its location and packaging or something, I guess that this might be, there's a reasonable probability it could be dope as opposed to, you know. Well, Your Honor, that would actually bring me to my second point, which is that what we actually have here in this case are findings by the trial court that this stuff was not recognizable as drugs. In order to overturn those factual findings, this court would have to find that those findings were against the manifest way of the evidence. And in this situation where, again, we have multiple police officers talking about how this is not, this doesn't look like what we're accustomed to seeing in drug cases, and the pictures, which, again, my position would be they don't look like drugs to me. Thank you. Okay, so if the substance is, you have a court finding that it's not recognizable as an illegal substance. Correct. Okay. Correct. Right. Correct. Okay. Now, where does this, are you saying this negates the probable cause to seize? I believe it negates the probable cause to effect a warrantless seizure of that substance, the same way that similar facts negated the probable cause to seize the pills in Humphrey. Okay. Well, let's forget Humphrey. Okay. Let's stay with this case. There was a probable cause to seize based on packaging. Is that a difference now? When he believes, I mean, he- I mean, wasn't it clear the officer testified seize these based on packaging? That is why he seized them. Okay. Our position would be that packaging does not always provide probable cause, particularly when the, alone, I should say alone, particularly when the officer testifies that he had in his very extensive law enforcement experience no recognition of it as an illegal substance. He knows from his extensive law enforcement experience that it's not- That's at the second hearing. That's at the second hearing. Yeah. Yeah. Okay. Was there a hearing on probable cause to seize? There was a suppression hearing. All right. Which is the issue? Sure. Any suppression hearing? Sure. Sure. My position on the first suppression hearing, first off, is that the theory that the counsel brought to that hearing was a frivolous theory. But more importantly, that, again, this officer testified a certain way at that hearing. Which counsel? Frivolous. Which counsel? Defense counsel. Okay. The suppression theory that was argued at the suppression hearing was frivolous. It was essentially that because people don't keep guns in their beds, you can't search the bed. I hope it requires no citation to say that there is no support for that proposition. So all of the testimony at that hearing is geared towards these what I would consider odd suppression theories. That officer testified a certain way at that hearing, testified a different way at a future hearing, and I think that it is incumbent upon us to reconcile that testimony if possible. To do that, we have to say, or I believe we have to say at any rate, that what really happened here is he had a hunch, but nothing more than a hunch. And that hunch was, maybe it's one of these other drugs. Thank you. We'd ask for this Court to reverse. Thank you. Thank you, Mr. Connelly. Ms. Campbell. Good morning, Your Honors. I'm Diane Campbell. I'm with the State's Attorney's Appellate Prosecutors, representing the people of the State of Illinois this morning. The first thing I'm going to talk about is the testimony at the motion to suppress. That's at, I'll refer to pages R20 and 21. The officer testified that he believed the substance to be drugs at 20 and 21, consistent with the packaging of drugs. And also on 21, he believes it's heroin or a bad batch of cocaine. And in the trial court's finding at R40, the defendant testified, in his experience, it looks like controlled sepsis. So that was the first suppression hearing. The second one, I do apologize, counsel is correct that I misstated, it was the cross-exam by the prosecutor. The defense counsel's question was at 78 and 80, and then the assistant State's Attorney's comments are at 83 and 84. And I encourage your honors to read those pages. You'll get the context of it. On 83, the officer testified that he suspected it may be, but he didn't know. And on 84, based on the way it was packaging, he suspected it was illegal drugs. And that is exactly in keeping with Brown v. Texas. In that case, the court holds that the use of the immediately apparent language in Horton is an unfortunate choice of words, since it can be taken to imply an unduly high degree of certainty as to the incriminating character of the evidence. And that is exactly what the defense counsel is urging here. At 1543, the court talks about probable cause as a flexible, common-sense standard. Merely requires facts available to the officer that would warrant a man of reasonable caution in the belief that the item may be contraband. And then again, not demand any showing of belief is correct or more likely true than false. You do not deal with hard certainties, but with probabilities. And the evidence seen and weighed not in the terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. And then the Illinois Supreme Court in Jones adopts that same probable cause standard and says that at page 274, the probable cause is a practical, non-technical concept that deals with the factual and practical considerations of everyday life, in which reasonable and prudent persons, not legal technicians, act. And again, immediately apparent or probable cause does not require an officer to, quote, know that the item is contraband. No, this is our Supreme Court saying that? Yes, this is Illinois Supreme Court in Jones. We have legal technicians? Are they admitted to the bar? I think maybe those are perhaps the lab technicians combined if they have a law degree. I'm not sure. I've never heard of that. Legal technician. That's interesting. I encourage you to read it fully then. It appears that this officer didn't even have a hunch. R83, the state asks him, so based on your many years of experience dealing with different types of drugs, you've had no recognition of that substance as an illegal drug. Is that correct? He says, that's correct. So, if he didn't recognize that there was, that it was an illegal substance, he does not put it on the inventory form as contraband, I guess I'm concerned that, you know, not only is it not, I mean, he doesn't, obviously he doesn't know 100%, he doesn't even suspect. I have to disagree with you on that, because one of the prior questions is that, did you know what it was? And he said no, and he doesn't have to know under Brown and Jones. All you have to do is, so there's enough, a suspect could be by packaging alone. A couple lines down, now you suspected that it might be, is that right? Officer says yes. And what was the basis for that? It was, on the next page, on page 84, now based upon the way that it was packaged, you suspected it was illegal drugs, correct? Correct. So, the officer doesn't have to know. Again, both Jones and other cases emphasize the role and recognition of law enforcement's experience in probable cause determinations, and that is at 280 and 281 in Jones. And in Senegal, the court considers all the circumstances known to the officer at the time. So, again, you've got the bags in baggies with the knots. It's, you know, placed under the blankets at the foot of the bed. You know, I personally keep my oatmeal in the kitchen in the Quaker Oats round jar. But the officer doesn't have to know, you know, and, you know, given the fact that he has a kitchen, that might be where he prepares his breakfast rather than in the foot of his bed. But, again, the officer doesn't have to know what it is for a probable cause to seize. I would also like to mention that the trial court saw the baggie, the motion to suppress. The judge and the jury at the jury trial saw the baggie. They saw the pictures of the substance, so they have a far better grasp. Those jurors don't make probable cause determinations. No, but the judge did, and he saw the substance at the hearing. You know, later for the conviction, you know, the evidence was certain sufficient, and the jury and the judge will decide. He seems more certain at the first hearing, obviously, than he does when they're going for joinder, when they're opposed to that, because he insists he had no idea what the substance was, and he could not think of any offense he possibly could have charged him with. For the 83, 84, 86, 99, 100, yeah, I didn't charge him because I didn't know. I guess if he has this probable cause because of the packaging, I guess I'm a little concerned. If the packaging is enough for the seizure, but he says he doesn't know. Still, at the second hearing, he has no idea what he could have charged him with and didn't charge him. It seems that he's giving, I guess, two different assessments. One, he's thinking it's drugs, and one, he's thinking it isn't, and he couldn't charge him even though he had said, but the packaging looks like it is drugs. I don't know why he didn't think he could charge him with anything, or why he testifies to that the second time. I think he's exactly meeting the requirements of Brown and Jones. He doesn't have to know what it is. As an officer, it's not. The state's attorney is going to be the one that determines the charges, so what he has to do is, as a reasonably prudent, experienced law enforcement personnel, suspect due to its packaging and the location, the circumstances, that it is, in fact, a controlled substance. I would also like to note that, actually, had a second suppression motion been filed, all this could have been brought up, and any conflicts or inconsistencies or non-inconsistence could have been explored, but it wasn't, so the state was not afforded the opportunity to present evidence. And I would like to actually read you a quote from Ocardo, which defense counsel quotes in his reply brief, The legality of the arrest cannot be determined from the record, as the only information on the issue is that offered by the state at the probation revocation hearing where the question of the legality of the arrest was not contested. The state was under no burden to adduce additional testimony to show the legality of the arrest absent, the issue being properly raised below by defendant. We cannot penalize the prosecution for failing to introduce evidence to support an arrest under these circumstances. Thus, they are not, the plain error will not be applied. And I'd like to go a little further into that. In this case, counsel said that I did not specify or address his argument for direct reversal. Certainly that's in Brooks, which is cited by both of us in our briefs. And that in Brooks, the court distinguishes between affirming or reversing a motion to suppress, and that's at 127 to 128. And to be reviewed on appeal, the evidence must have been presented to the trier of fact. There, the appellate court declined to remand for further proceedings on a motion to suppress. But it did state that if the court can't reach an informed judgment, it could remand to the trial courts to allow the state to present independent origins. In this case, on the defense brief, page 12, he notes that there's nobody else at the house, that the officer's going to be there for quite some time. So he says that I believe it would be little burden for the state to go and get another warrant. That obviously would raise issues of, sorry, inevitable discovery. But again, because there wasn't a second motion to suppress, that, you know, was not afforded the safety opportunity. But I also disagree with counsel that the evidence was closely balanced. I don't believe it was at all. In this case, the officers testified. The judge and the jury saw the cocaine. And perhaps a wonderful corroboration is the telephone call from the jailhouse by the defendant to Amber Jones, in which they have a dialogue, and Amber is asking about whether he had drugs. He acknowledges that he had drugs. I think he said it was a bad or stupid decision to have them there. They're just there because he's going to fix them. That surely corroborates all the testimony that, you know, this is heroin or bad cocaine. You know, it looks like a strange controlled substance or not typical. You know, it just reinforces that that cocaine was the defendant's, you know, stored conveniently there at the bottom of his bed. All right. I'd also like to address a little bit the ineffective sense of counsel claim. You must overcome the presumption that counsel's challenged actions are trial strategy and that you also judge counsel's performance. You look at the totality of their circumstances and not disturb on the basis of ineffective assistance unless the totality of counsel's conduct indicates actual incompetence. That's for more. Here, there was the initial motion to suppress. Then there was a very lengthy and diligent, speedy trial. And during your motion at the actual trial, defense counsel cross-examined the two police officers, also cross-examined the defendant's roommate, Mr. Jackson. Part of the defense theory at trial was that since the defendant slept mainly on the couch, the drugs could have been placed there by either his roommate Jackson or by two female guests. And then also defense counsel was challenging the chain of custody for the drugs. So again, counsel gave a very credible performance at trial, did their best from some really damning circumstances of finding the cocaine and then having that corroborated with Amber Jones' telephone call with the defendant. Again, had there been another motion to suppress, I don't believe it would have been successful because the officer did meet the standard of Jones and Brown. Here's our time, unless your honors have any more questions. Thank you very much. Thank you, Ms. Campbell. Mr. Connelly, some rebuttal. Your honors, just a couple of brief points. First, in terms of the testimony at the motion to suppress that counsel brought up, that this officer believed that these were drugs. Again, I believe that it is incumbent upon us to reconcile that testimony with the later testimony. Otherwise, the conclusion, at least to me, is inescapable that this witness was lying at one of those hearings. Let me ask you this. If he didn't suspect that they were drugs, why did he send them to the lab to be tested? Again, my interpretation is that he had a hunch and he acted on the hunch. We don't allow police officers to act on hunches like that. That's contrary to the Fourth Amendment. It's the same hunch that the officer in Humphrey had about the massive pills. He even looked a little baggy and powdered and got knotted like these things are packaged. He said, I think those are drugs, but I don't know it because it used to be, back in the day, I don't know if it's still, if turkeys are the problem out there where people bag up stuff and sell it boneheads up and it's not drugs at all. So he said, gee, I think those are drugs. Did you know those were drugs? No, I didn't know. Well, this is not, first off, I don't believe that that's what happened in this case. These are not tiny corners of baggies packaged for individual sale. This is not the white powder that we usually see in cocaine cases. This is not the smaller personal use amounts that we usually see packaged together in heroin cases. These are fairly sizable bags of some sort of crumbly, powdery black, sorry, brown substance that frankly does not appear the way that you're describing at this moment, Your Honor. They're sort of in the bed sheets. I don't know too many people who packed their lunch on their bed. It seems like both the packaging and the location of those packages sort of raises the question to the officer that this isn't right, that it looks, in his experience, like they're drugs because that's how they're packaged. But he wouldn't know what kind they were or anything or that it could maybe be something else, right? Well, I would respectfully disagree. I don't think that the location of it is as relevant as appears to be coming up in this conversation, in part because we don't, there's some testimony as to the layout of the house, okay? We know that there are other people living there. The bedroom is a domestic area. I mean, obviously you're not packaging your breakfast in bed, but it would be untrue for me to say that I've never taken the packaging that I'm bringing with me from the kitchen and put it together in my daily carry in some other room of the house. Well, all that aside, I mean, the law is pretty clear that reasonable, innocent explanations don't negate probable cause. In fact, if you can give a list of reasonable, innocent explanations, that doesn't negate probable cause. Certainly. This case is not about my speculation as to what Mr. Lee might have been doing. This case is about the very, very clear testimony from the officer that he did not recognize this as an illegal substance. Once he said, even under Brown, even under Jones, once he says that he does not recognize that it is illegal, any hunch that he has is merely a hunch. Any suspicion that he has is not reasonable. This is about him saying he doesn't believe it's illegal. He tested it anyway because it's packaged like something that might be illegal, but he says he does not recognize it as an illegal substance. Him seizing this is the same as him seizing any number of other things that aren't contraband that happen to be contained in ways that one might sort of stereotypically think they should be contained. If, for example, thank you. Let me just ask you. So let's suppose you've got this bag that's opaque, you can't see through it, and you've got the knotted balloon. You can't see what's inside there. What if it was a knotted balloon, blue balloon? So again, the officer says that as a result of my extensive experience as a law enforcement officer, I did not recognize this as an illegal substance. Had that been in a blue balloon, I imagine that testimony would have been different. Well, let's suppose. Help me out. So if in a hypothetical, he says, I don't know what the hell is in there. There's some kind of substance in there, but I can't see it. It probably will cause a seizure. Have it tested. You can feel there's something in there that was granular. I would be hard-pressed on appeal to argue against that if he testified that he, based on his extensive experience, that he believed that this was drugs. That's not what happened here. He said, the state said, the judge said that he did not have probable cause. Period. Hard return. And because of that, he was not allowed to seize this. And I would be concerned that saying otherwise would open up the people of Illinois to very, very, how to say, unpredictable results in their interactions with police officers in the future. Thank you, your Honor. Thank you, Mr. Connelly. Ms. Campbell, thank you. And we'll take this matter under advisement that this position will be issued. Right now the court will be in recess until 1 p.m.